# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 18, 2012            Decided December 14, 2012

No. 11-1330

PMCM TV, LLC,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

On Appeal from an Order of the
Federal Communications Commission

*Donald J. Evans* argued the cause for appellant. With him on briefs were *Harry F. Cole* and *Anne Goodwin Crump*.

*Joel Marcus*, Counsel, Federal Communications Commission, argued the cause for appellee. On the brief were *Austin C. Schlick*, General Counsel, *Peter Karanjia*, Deputy General Counsel, *Richard K. Welch*, Deputy Associate General Counsel, and *Laurence N. Bourne*, Counsel. *C. Grey Pash Jr.*, Counsel, entered an appearance.

Before: TATEL, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Section 331(a) of the Communications Act directs the Federal Communications Commission to approve "reallocations" of very high frequency (VHF) television channels to States currently lacking such a channel. Relying on this provision, appellant filed an application to reallocate VHF channels from Nevada and Wyoming to New Jersey and Delaware. The Commission denied the application, interpreting section 331(a) to require reallocations of channels only between neighboring locations. Because the Commission's decision conflicts with the statute's text and purpose and because appellant can move its channels without creating signal interference, we reverse.

**I.**

For most of broadcast television's history, VHF channels have enjoyed substantial technical advantages over other broadcasting methods. *Reallocation of Channel 2 from Jackson, Wyoming to Wilmington, Delaware & Reallocation of Channel 3 from Ely, Nevada to Middletown Township, New Jersey*, 26 F.C.C. Rcd. 13,696, 13,697 (2011) ("FCC Order"). Indeed, by the 1950s, most metropolitan areas across the eastern seaboard had VHF stations. But the Commission had allocated no VHF channels to Delaware and only a single VHF channel, which was operating non-commercially, to New Jersey. *Id.* at 13,697. The reason for this was that interference from VHF stations broadcasting in New York City, Philadelphia, and Baltimore prevented placing additional channels in New Jersey and Delaware. *Id.* at 13,697–98. People living in these two States could thus receive VHF programming only by tuning in to New York, Pennsylvania, or Maryland stations. *New Jersey Coalition for Fair Broadcasting v. FCC*, 574 F.2d 1119, 1121–22 (3d Cir. 1978).

The dispute before us today is the latest in a decades-long effort to correct this problem. In 1980, New Jersey Senators Bill Bradley and Pete Williams petitioned the Commission to "reallocate" a New York VHF channel to New Jersey. *Petition to Reallocate VHF-TV Channel 9 from New York, New York, to a City Within the City Grade Contour of Station WOR-TV*, 84 F.C.C. 2d 280–83 (1981). Moving a channel from neighboring New York could be accomplished without creating interference because the newly-established New Jersey channel would simply fill the void left by the vacated New York channel.

Without waiting for the Commission to act, Senator Bradley introduced the statute at issue here. Enacted by Congress as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub L. No. 97-248, 96 Stat. 324, 641, the provision, now codified as section 331(a) of the Communications Act, 47 U.S.C. § 331(a), states:

> It shall be the policy of the Federal Communications Commission to allocate channels for very high frequency commercial television broadcasting in a manner which ensures that not less than one such channel shall be allocated to each State, if technically feasible. In any case in which [sic] licensee of a very high frequency commercial television broadcast station notifies the Commission to the effect that such licensee will agree to the reallocation of its channel to a community within a State in which there is allocated no very high frequency commercial television broadcast channel at the time [sic] such notification, the Commission shall, notwithstanding any other provision of law,

order such reallocation and issue a license to such licensee for that purpose pursuant to such notification for a term of not to exceed 5 years as provided in section 307(d) of this title.

Prompted by section 331(a)'s second sentence, the Commission granted a petition by a New York channel to move to New Jersey. FCC Order, 26 F.C.C. Rcd. at 13,698–99. An unsuccessful competitor for the license appealed the Commission's decision to this Court, contending that New Jersey was not "a State in which there is allocated no [VHF] commercial television broadcast channel" because the non-commercial VHF station operating there had actually been allocated as a commercial channel. In *Multi-State Communications, Inc. v. FCC*, 728 F.2d 1519, 1522–24 (D.C. Cir. 1984), we relied on Senator Bradley's extensive involvement in the bill's passage to reject this textual argument and hold that the statute did apply to New Jersey. "Construing a statutory term," we explained, "requires more than a superficial and isolated examination of the statute's plain words." *Id.* at 1522. We also rejected the competitor's argument that other provisions of the Communications Act required a comparative hearing, finding that interpretation inconsistent with the statutory text that "the Commission shall, notwithstanding any other provision of law, order such reallocation and issue a license." *Id.* at 1524–25 (emphasis omitted). We concluded that section 331(a) "displaced the normal procedures for channel reallocation as well as the normal procedures for issuing licenses, including the requirement of a comparative hearing." *Id.* at 1525.

Flash forward to 2009 when the United States transitioned from analog to digital television broadcasting. Because VHF is poorly suited for digital broadcasting, the Commission allowed several stations to substitute other

channels for their VHF allotments. *PMCM TV, LLC c/o Harry F. Cole, Esq.*, 24 F.C.C. Rcd. 14,588, 14,595 & n.38 (2009) ("Bureau Decision"). As a result, New Jersey and Delaware once again had no VHF stations. But unlike when section 331(a) was enacted, the digital transition made it technically feasible to allocate new VHF channels to New Jersey and Delaware on vacated airwaves without creating signal interference. FCC Order, 26 F.C.C. Rcd. at 13,707–08.

Within days of the digital transition and setting the stage for the case before us, PMCM, a television station operator, proposed to reallocate its Nevada and Wyoming VHF channels to New Jersey and Delaware, respectively. *Id.* at 13,699. The Commission's Media Bureau denied the request. Although acknowledging that both moves could be accomplished without creating signal interference, the Bureau found that the proposed moves were not "reallocations" within the meaning of section 331(a)'s second sentence. Bureau Decision, 24 F.C.C. Rcd. at 14,594 n.33, 14,595. In doing so, the Bureau conceded that the term "reallocation" was susceptible to two different meanings. *Id.* at 14,590–91. Under the broader interpretation, advocated by PMCM, the Commission would "consider any allocation of a channel to a state without a VHF channel as a 'reallocation' if the proponent currently operates a station on the same channel somewhere in the United States and agrees to terminate service on that channel and move to the unserved state to operate on the same channel there." *Id.* at 14,590. The Bureau observed that "although PMCM asserts that its proposals are technically feasible, [PMCM] contends that the Commission must order such 'reallocation' even if it is not technically feasible because the second sentence of Section 331 has no explicit technical feasibility condition." *Id.* Rejecting PMCM's interpretation of "reallocation," the Bureau concluded that the word meant "the shifting of a channel allocation from one community to another community under

circumstances where the channel cannot be used simultaneously at both locations due to interference concerns." *Id.* at 14,593. Under this narrower reading, the second sentence would apply to moves between neighboring locations, such as from New York City to New Jersey, but not to moves between distant locations, such as those proposed by PMCM.

The Commission denied PMCM's application for review. FCC Order, 26 F.C.C. Rcd. at 13,708. Conceding that PMCM's proposed moves would cause no interference, the Commission confirmed the Bureau's interpretation of "reallocation," explaining that "it is more reasonable to interpret the term to mean the moving of a VHF channel to a new state under circumstances where the channel cannot be used simultaneously at the authorized and proposed new location because such dual operations would cause interference." *Id.* at 13,702.

PMCM now appeals.

## II.

Congress enacted section 331(a) to solve a specific problem existing at the time of its passage—the lack of a commercial VHF station in New Jersey. Our task is to determine how section 331(a) applies to a situation not contemplated by Congress. Although this is hardly an unusual undertaking for this Court, it is unusually challenging here because Congress held no hearings on section 331(a), passed it as a rider to an unrelated tax bill, and used language we have found cannot be interpreted literally. *See Multi-State Communications*, 728 F.2d at 1522–24.

The parties believe that this case turns on the word "reallocation" in section 331(a)'s second sentence, although they disagree about what the word means. PMCM contends

that section 331(a) uses the term without "limiting condition," Appellant's Br. 19, and that its proposed moves fall under the statute's literal language because New Jersey and Delaware are "State[s] in which there is allocated no very high frequency commercial television broadcast channel at the time [of] such notification," 47 U.S.C. § 331(a). Although conceding that its interpretation would require the Commission to approve reallocations that cause signal interference, PMCM maintains that the omission of the words "technical feasibility" from section 331(a)'s second sentence "invites any commercial VHF licensee to fill an allocation gap created by the Commission's failure to comply with the first sentence." Appellant's Br. 25. For its part, the Commission believes that "reallocation" refers only to moves between adjacent locations "because technical feasibility is assured in situations involving reallocations of channels to nearby communities where the two allocations are mutually exclusive." FCC Order, 26 F.C.C. Rcd. at 13,702. Although conceding that PMCM's proposed reallocations would themselves cause no interference, the Commission warns that under PMCM's broader reading of section 331(a), it "would be required to grant any move request even if it would cause harmful interference to existing stations." Appellee's Br. 34.

In our view, the parties' differing interpretations suffer from insurmountable problems. PMCM's interpretation creates the potential for signal interference, which would leave viewers watching static. Given the basic purpose of the Communications Act—to ensure interference-free broadcasting—PMCM's interpretation makes little sense. *See, e.g.*, *National Broadcasting Co. v. FCC*, 516 F.2d 1101, 1110 (D.C. Cir. 1974) ("Congress created the Federal Communications Commission and its predecessor, the Federal Radio Commission, because the available space on the electromagnetic spectrum was far exceeded by the number of

those who would use it."). Had Congress intended to alter this fundamental element of telecommunications policy, we doubt it would have done so without hearings and in a two-sentence rider to an entirely unrelated tax bill.

The Commission's interpretation is equally unsatisfying. For one thing, nothing in section 331(a)'s text limits the second sentence to "situations involving reallocations of channels to nearby communities where the two allocations are mutually exclusive." FCC Order, 26 F.C.C. Rcd. at 13,702. At oral argument, Commission counsel conceded that reallocation is neither a defined term under the Communications Act nor a term commonly used by the Commission. *See* Oral Arg. Rec. 23:43–24:39. The Commission also concedes that it has used the word "allocation" to refer to any channel allotment without regard to geography. *See, e.g.*, *Oversight of the Radio and TV Broadcast Rules*, 1 FCC Rcd. 849, 849 (1986) ("After allocating frequencies for broadcasting purposes, the supervising Mass Media Bureau allots frequencies to geographical areas in the U.S.A. and its territories and possessions for specific services therein."). Moreover, the Commission's interpretation conflicts with Congress's plainly stated goal to "ensure[] that not less than one [VHF] channel shall be allocated to each State, if technically feasible." 47 U.S.C. § 331(a).

Setting aside the parties' unilluminating dispute over the meaning of "reallocation," and focusing on the two things we do know about Congressional intent—that Congress passed the Communications Act to ensure interference-free broadcasting and section 331(a) to ensure that every State has at least one VHF station if technically feasible—we think section 331(a)'s meaning becomes clear despite the statute's linguistic defects. The first sentence directs the FCC to allocate VHF channels to each State where technically feasible, and the

second sentence directs the Commission to grant any proposed technically feasible reallocation to unserved States. Interpreted this way, section 331(a) fulfills congressional intent: it ensures that every State will have a VHF station so long as that goal can be accomplished without causing signal interference. This is the best interpretation of section 331(a) because it reads the two sentences as a coherent whole and is consistent with the basic purpose of the Communications Act.

In reaching this conclusion, we realize, as PMCM repeatedly reminds us, that unlike section 331(a)'s first sentence, its second sentence does not mention technical feasibility. But if, as we think, the second sentence functions as a subpart of the first, then Congress had no need to mention technical feasibility in the second sentence. Nor is it significant that the second sentence contains the phrase "notwithstanding any other provision of law." As we explained in *Multi-State Communications*, this language simply serves to "displace[] the normal procedures for channel reallocation as well as the normal procedures for issuing licenses." 728 F.2d at 1525.

## III.

Given the foregoing and given the Commission's concession that PMCM's proposal is technically feasible, we reverse and remand to the Commission with instructions to approve the reallocations.

*So ordered.*